**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

GARRISON SYSTEMS, LLC,

    *Plaintiff*,

v.

ZIP POOL CAGE SCREEN REPAIR
SWFL, LLC; ZIP FLOOD CONTROL
POOL CAGES HURRICANE
WINDOWS & SHUTTERS LLC;
and EDWARD B. HOSKINS,

    *Defendants*.

_____/

Case No.: 2:26-cv-____-____

**DEMAND FOR A JURY TRIAL**

## COMPLAINT

Plaintiff, Garrison Systems, LLC, brings this Complaint against Defendants, Zip Pool Cage Screen Repair SWFL, LLC; Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC (collectively, the "Zip Defendants"); and Edward B. Hoskins for copyright infringement, deceptive acts and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), unfair competition under the Lanham Act, unjust enrichment, and breach of contract. Plaintiff alleges as follows:

1

## NATURE OF THE ACTION

1.    This is an action for injunctive and monetary relief arising from Defendants' copyright infringement, deceptive acts and unfair trade practices, unfair competition, unjust enrichment, and breach of contract.

2.    Plaintiff Garrison and Defendants compete in the same industry and geographic market selling and installing flood control systems.  Garrison has served that market for decades; Defendants started in early 2025.  Unlike Defendants, Garrison also designs and manufactures its own high-quality flood control systems.

3.    Garrison's website contains dozens of copyrighted images of its products and services and detailed promotional and educational materials.  Garrison proudly displays examples of completed installations of its products in various circumstances and settings.  Through that content, Garrison showcases its superior products and superior engineering, construction, and installation knowledge, skill, and experience that have earned over many years the goodwill and trust of the marketplace.  Garrison's website also contains terms of service where visitors agree not to copy or use any images or materials on the website without permission or for impermissible purposes.

4.    Defendants did precisely that when they unlawfully copied and used without permission Garrison's website images and materials, including Garrison's images showing completed installations in various circumstances, descriptions of

2

Garrison's flood control systems, and Garrison's technical product design drawings. Defendants unlawfully published to the consuming public Garrison's images and materials as their own, thereby misleading the consuming public into believing that Garrison's images and materials reflected Defendants' own superior products and superior engineering and construction knowledge and skill derived from extensive experience installing effective flood control systems. In truth, Defendants were inexperienced newcomers to this marketplace offering cheap and lesser quality flood control products and with little or no experience engineering, constructing, and installing flood control products in different circumstances and settings.

5. Said another way, Defendants' misappropriations of Garrison's website materials and images misled the consuming public concerning Defendants' lack of engineering, construction, and installation knowledge, skill, and experience, as well as the inferior quality of their flood control products. As a result and as Defendants intended, the consuming public purchased Defendants' products and services, and at higher prices, than would have been the case had the truth been known—that Defendants are newcomers to this marketplace selling inferior products and installation services.

6. Garrison brings this action to enforce its rights to its intellectual property, to prevent Defendants' unfair competition and deceptive trade practices,

3

and to enforce the agreement in its website's terms of service.  Garrison seeks injunctive relief, damages, and to divest Defendants of their unjust profits.

## PARTIES

7.    Garrison Systems, LLC is a limited liability company organized under the laws of New York, with a principal place of business at 6601 Lyons Road, Unit F6-7, Coconut Creek, Florida 33073.

8.    Zip Pool Cage Screen Repair SWFL, LLC is a limited liability company organized under the laws of Florida, with a principal place of business at 1118 SW 16th Terrace, Cape Coral, Florida 33991.

9.    Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC is a limited liability company organized under the laws of Florida, with a principal place of business at 1118 SW 16th Terrace, Cape Coral, Florida 33991.

10.    Edward B. Hoskins is a natural person and resides in Lee County, Florida.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over Garrison's Lanham Act and copyright infringement claims under 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121(a).

12.    The Court has supplemental jurisdiction over Garrison's state-law claims under 28 U.S.C. § 1367(a), because those state-law claims share a common

4

nucleus of operative fact with Garrison's claims under the Copyright Act and Lanham Act.

13.   The Court also has supplemental jurisdiction over Garrison's state-law claims for deceptive trade practices under 28 U.S.C. § 1338(b), because those state-law claims are joined with substantial and related claims under the Copyright Act and Lanham Act.

14.   Venue is proper in this district under 28 U.S.C. § 1391(b), because all Defendants are located in Lee County and because a substantial part of the events giving rise to the claims occurred in Lee County.

15.   This Court has personal jurisdiction over Defendants, because each of the Zip Defendants' principal places of business is in the State of Florida and because Defendant Hoskins resides and has domicile in Florida.

16.   The Court also has personal jurisdiction because Defendants' conduct giving rise to this lawsuit occurred in Florida.

## FACTUAL ALLEGATIONS

### Plaintiff Garrison's Business Model and Website

17.   For years, Garrison has operated in the flood control market.  Garrison has sold and installed its flood control products for use in thousands of homes, commercial properties, and government facilities.

5

18. Garrison operates throughout the United States and Canada, with offices and warehouses in Florida, California, and New York.

19. Garrison designs and manufactures a variety of flood control systems to help government agencies, businesses, and homeowners protect their property and equipment against flood damage.

20. In addition to manufacturing and selling flood control products, Garrison also engineers, constructs, and installs flood control solutions particular to each individual customer's needs and circumstances at each location.

21. Garrison's engineering services include expert analysis of each customer's flood vulnerability and recommended effective flood control products and types of installations of those products.

22. Proper installation of effective flood control products requires, among other things, engineering, construction, and installation knowledge, experience, and expertise to design, measure, layout, align, affix, seal, and anchor appropriate flood control products to the customer's specific structures or surrounding areas. Garrison experts must properly assess in each customer's circumstance, among other things, the anticipated water height, pressure, and weight on the flood barriers, the corresponding necessary length and height of flood barriers and their layout, the corresponding necessary type and amount of support required for the flood barriers, and the proper means and methods of affixing and anchoring the flood barriers.

6

Improper engineering or installation can lead to failure of the flood control system and result in severe damage in the event of flood conditions.

23.    Garrison acquired its specialized product designs, manufacturing expertise, and engineering, construction, and installation knowledge and skills through years of hands-on experience involving thousands of installations in various configurations, circumstances, and conditions.

24.    At all times relevant to this lawsuit, Garrison used a website to sell its products and services, educate current and future customers, and showcase its knowledge, skill, experience, and expertise.

25.    Garrison owns all the content on its website, including the images, photographs, educational materials, trademarks, trade names, and the website's design.

26.    All content on Garrison's website was created by Garrison, is creative and unique in the marketplace, and has obvious proprietary value.

27.    On its website, Garrison strategically and carefully curated images and photographs of its products and completed installations in different configurations and circumstances to demonstrate, among other things, Garrison's superior knowledge, skill, experience, expertise, and products and services.

28.    At all times relevant to this lawsuit, Garrison's website, on the "Terms of Service & Sale" page, said that "by visiting our site . . . you engage in our 'Service' or with our 'Product' and agree to be bound by the following terms and conditions."

29.    A term in Section 2 stated, "You agree not to reproduce, duplicate, copy, sell, resell, or exploit any portion of the Website, Service, use of the Service, or access to the Service or any content on the website through which the Service is provided, without express written permission by us."

30.    A term in Section 13 prohibited a website visitor "from using the site or its content: (a) for any unlawful purpose; (b) to solicit others to perform or participate in unlawful acts; (c) to violate any . . . federal . . . or state regulations, rules, laws, or local ordinances; (d) to infringe upon or violate our intellectual property rights . . .; [or] (f) to submit false or misleading information."

31.    At all times relevant to this lawsuit, Garrison's website displayed an underlined hyperlink to the above Terms of Service & Sale on the bottom of every page.

## Garrison's Valuable Intellectual Property Rights in its Copyrighted Works

32.    Garrison invested resources, including time, effort, talent, creativity, and money, to produce photographs and creative content on its website to reflect its superior products, knowledge, skill, experience, and expertise to consumers seeking flood control products.

33. Each image and piece of work product on Garrison's website is a separate copyrighted work.

34. Garrison holds the copyrights for the pictures and work product depicting flood control products and services that Garrison published on its website.

35. Starting in October 2025, Garrison filed copyright registration applications for many of the images and designs that it displayed on its website.

36. In February and March 2026, the Copyright Office approved registrations of several of Garrison's images that are the subject of this litigation (collectively, the "Works"). Copies of those Certificates of Registration are attached to this Complaint as **Composite Exhibit A**.

37. Garrison reserves the right to add further registered images and work product to this Complaint if and when the Copyright Office issues additional registrations to Garrison.

38. Among the Works are the following images:

39.    *Registration No. VA 2-486-617*.   This copyrighted image depicts a computer-aided design ("CAD") drawing of Garrison's proprietary flood control products:



10

40.    *Registration No. VA 2-486-615*.  This copyrighted image depicts a CAD drawing of Garrison's proprietary flood control products:



11

41.     *Registration No. VA 2-486-613.*  This copyrighted image depicts a CAD drawing of Garrison's proprietary flood control products:



42.     *Registration No. VA 2-486-606*.  This copyrighted image depicts a CAD

drawing of Garrison's proprietary flood control products:



13

43.    *Registration No. VA 2-486-614.*  This copyrighted image depicts a CAD

drawing of Garrison's proprietary flood control products:



14

44.    *Registration No. VA 2-486-607.*  This copyrighted image depicts a CAD

drawing of Garrison's proprietary flood control products:



15

45.    *Registration No. VA 2-486-605*.  This copyrighted image depicts a CAD drawing of Garrison's proprietary flood control products:



16

46.     *Registration No. VA 2-487-612*.   This copyrighted image depicts a completed installation by Garrison of flood barriers at various home entrances:



47.     *Registration No. VA 2-487-028*.   This copyrighted image depicts a completed installation by Garrison of a flood barrier in front of a sliding-glass door:



48.     *Registration No. VA 2-487-024.*  This copyrighted image depicts a completed installation by Garrison of a flood barrier at the front entrance of a home:



49.     *Registration No. VA 2-487-025.*  This copyrighted image depicts a completed installation by Garrison of a flood barrier at the front entrance of a home:



50.    *Registration No. VA 2-484-063*.  This copyrighted image depicts a completed installation by Garrison of a flood barrier around a generator anchored on a concrete slab:



51.    *Registration No. VA 2-483-814*.  This copyrighted image depicts a proprietary illustration of how Garrison's aluminum flood barrier system works:



52.    *Registration No. VA 2-483-796*.  This copyrighted image depicts a proprietary illustration of the locking mechanism for certain posts in Garrison's aluminum flood barrier system:



53.    *Registration No. VA 2-487-283*.  This copyrighted image depicts a proprietary illustration of the differences between inside and outside mounting options for Garrison's aluminum flood barrier system:



54. *Registration No. VA 2-489-067.* This copyrighted image depicts a proprietary illustration of how Garrison's aluminum flood barrier system mounts outside of an opening:



55. *Registration No. VA 2-487-608.* This copyrighted image depicts a completed installation by Garrison of flood barriers at garage entrances:



**Defendants Misappropriate Garrison's Intellectual Property and Experience**

56.    Hoskins is the CEO and founder of Zip Pool Cage Screen Repair SWFL, LLC, and Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC.

57.    Hoskins founded Zip Pool Cage Screen Repair SWFL, LLC in October 2022.

58.    Zip Pool Cage Screen Repair SWFL, LLC initially operated in the markets of installing and repairing pool screens, hurricane windows, and shutters.

59.    In late 2024 or early 2025, Hoskins expanded Zip Pool Cage Screen Repair SWFL, LLC's lines of business to include marketing, selling, and installing flood control products that compete in the same market with Garrison's products and services.

60.    Defendants visited Garrison's website and, without the knowledge or permission of Garrison, copied and saved images, designs, work product, and other proprietary material from Garrison's website (including the Works).

61.    In addition and in the alternative, Defendants accessed Garrison's images and other website content (including the Works) by searching for images on Google or another similar search engine.

22

62.    Defendants then without permission and without attribution presented the copied material as their own to the consuming public on Defendants' website and other marketing media and materials.

63.    Through his personal social media accounts, Hoskins without permission and without attribution also uploaded and reposted and publicly displayed several images (including the Works) copied from Garrison's website.

64.    In addition and in the alternative, Defendants knowingly received from one or more persons or entities Garrison's unlawfully copied images, photographs, designs, work product, and other proprietary material (including the Works) and, with full knowledge that Defendants had no permission to do so, misleadingly and falsely published Garrison's stolen website images and materials (including the Works) on Defendants' own website and other marketing media as Defendants' own.

65.    Defendants sold lower quality flood control products different from the misappropriated Garrison work product, images, and materials (including the Works) presented on Defendants' website and other marketing materials. Defendants' misappropriation was brazen and misled the consuming public concerning the actual products being sold.

66.    Defendants copied and misappropriated substantial portions of Garrison's website, including several of Garrison's graphics, and images of Garrison's products and completed installation projects (including the Works).

23

67.     By misappropriating Garrison's images and other website materials (including the Works) and presenting them as Defendants' own, Defendants misled the consuming public into believing (i) that Defendants possessed more knowledge, skill, experience, and expertise than they actually did; (ii) that the depicted products and completed installations were Defendants' own; and (iii) that Defendants' goods and services were of comparable quality and efficacy to those depicted.

68.     As a result of their actions, Defendants misled the consuming public into purchasing Defendants' products and services, and purchasing those products and services at higher prices, than otherwise would have been the case.

### Dissolution of Zip Pool Cage Screen Repair SWFL, LLC and Continuation by Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC

69.     On April 15, 2025, Garrison filed its initial lawsuit against Zip Pool Cage Screen Repair SWFL, LLC and Hoskins in the Florida Circuit Court for the Twentieth Judicial Circuit in Lee County, Florida.

70.     After Garrison filed its lawsuit, Hoskins formed Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC and Zip Flood Control LLC.

71.     Hoskins formed Zip Flood Control LLC on or around May 1, 2025.[1]

---

[1] Garrison has not named Zip Flood Control LLC as a defendant in this lawsuit at this time. Garrison reserves the right to do so after the benefit of discovery and discussions with opposing counsel about Zip Flood Control LLC's role, if any, in the conduct and activities giving rise to this lawsuit.

72.     Hoskins formed Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC on or around August 22, 2025.

73.     On February 2, 2026, Hoskins filed for the voluntary dissolution of Zip Pool Cage Screen Repair SWFL, LLC.

74.     On information and belief, Defendant Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC is a successor to Zip Pool Cage Screen Repair SWFL, LLC by mere continuation under a different name, by de facto merger, or by virtue of having assumed the obligations of its predecessor.   Alternatively, Defendant Hoskins formed Defendant Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC in a fraudulent effort to avoid the liabilities of its predecessor.

75.     On information and belief, Hoskins dissolved Zip Pool Cage Screen Repair SWFL, LLC and formed Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC to continue the same business under a different name.

76.     Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC operates from the same or substantially the same location as Zip Pool Cage Screen Repair SWFL, LLC.

77.     Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC markets many of the same products and services as Zip Pool Cage Screen Repair SWFL, LLC.

78. Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC serves the same customer base as Zip Pool Cage Screen Repair SWFL, LLC.

79. Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC uses the same or substantially similar phone numbers, web domains, social media accounts, equipment, assets, and personnel as Zip Pool Cage Screen Repair SWFL, LLC.

80. On information and belief, Zip Pool Cage Screen Repair SWFL, LLC and Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC have the same officers, directors, managers, and members.

81. On information and belief, Zip Pool Cage Screen Repair SWFL, LLC transferred to Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC substantially all of the former's tangible and intangible assets, including goodwill, customer leads, advertising materials, drawings, and other intellectual property.

82. On information and belief, Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC assumed the liabilities of Zip Pool Cage Screen Repair SWFL, LLC.

83. On information and belief, such transfers were for little or no consideration, leaving Zip Pool Cage Screen Repair SWFL, LLC undercapitalized and unable to satisfy creditors.

26

84. On information and belief, such transfers were made for the improper purpose of hindering, delaying, or defrauding creditors.

85. On information and belief and at all relevant times, Hoskins dominated and controlled both Zip Pool Cage Screen Repair SWFL, LLC and Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC to such an extent that their respective independent existence was in fact non-existent, and Hoskins was their respective alter egos. Hoskins caused the dissolution and transfers described above.

86. On information and belief, Zip Pool Cage Screen Repair SWFL, LLC and Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC failed to observe corporate formalities.

87. On information and belief, Hoskins used the corporate form of Zip Pool Cage Screen Repair SWFL, LLC and Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC fraudulently or for an improper purpose, including for the purpose of hindering, delaying, or defrauding creditors and hiding assets.

88. On information and belief, the fraudulent or improper use of the corporate form of Zip Pool Cage Screen Repair SWFL, LLC and Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC has caused injury to Garrison, including by requiring Garrison to amend and sue the new successor entity in order to obtain the equitable relief, damages, and divestiture of wrongful profits to which Garrison is entitled.

27

## Examples of Defendants' Misappropriation against Garrison

89. The following examples demonstrate Defendants' willful misappropriation of Garrison's website content:

90. **Example 1:**

*Proprietary images on Garrison's website:*[2]



*Image on Defendants' website:*



---

[2] A red box has been added to some of these screenshots in these examples to highlight particular instances of Defendants' misappropriation.

91.    **Example 2:**

*Proprietary images on Garrison's website*:







*Image on Defendants' website*:




92.    **Example 3:**

*Proprietary images on Garrison's website*:



*Images on Defendants' website*:





Sliding Glass Door Protection



Generator Protection

93.    **Example 4:**

*Proprietary images on Garrison's website*:



*Images on Defendants' website*:





94.     **Example 5:**

*Proprietary images on Garrison's website*:



*Images on Defendants' website*:





## How Does Our Flood Panel System Work?

We use a series of aluminum planks that are slotted into support posts mounted on either side of the opening to be protected.  The Planks have rubber EPDM seals on the underside, and posts have Rubber EPDM in the slot, which helps create a durable seal-off against water infiltration.

For added wind and debris resistance, floodgate planks are tightened against the seal within the posts and bracketed down from the top so that they stay in place in even the most extreme situations.

**Flood Plank Testing Tank Installation Nears Completion!**

We're thrilled to announce that we're in the final stages of installing our state-of-the-art Flood Plank Testing Tank – a game-changer in flood defense.



95.    **Example 6:**

*Proprietary images on Garrison's website*:



*Images on Defendants' website*:



96.    **Example 7:**

*Proprietary images on Garrison's website*:

 

  

*Images on Defendants' website*:



97.    **Example 8:**

*Proprietary image on Garrison's website*:



*Images on Defendants' website*:



98.   In February 2025, Hoskins uploaded and posted misappropriated Garrison images to his Facebook account.  The following are examples:

99.   **Example 9:**

*Proprietary images on Garrison's website*:



*Image on Hoskins' Facebook account*:



100.   **Example 10:**

*Proprietary images on Garrison's website*:



*Image on Hoskins' Facebook account*:

101.　**Example 11:**

*Proprietary images on Garrison's website*:



*Image on Hoskins' Facebook account*:



102.    **Example 12:**

*Proprietary images on Garrison's website*:



*Image on Hoskins' Facebook account*:



103.  **Example 13:**

*Proprietary images on Garrison's website*:



*Image on Hoskins' Facebook account*:



104.  **Example 14:**

*Proprietary images on Garrison's website*:






*Image on Hoskins' Facebook account*:



105.   **Example 15:**

*Proprietary images on Garrison's website*:



*Image on Hoskins' Facebook account*:



106.   **Example 16:**

*Proprietary images on Garrison's website*:



*Image on Hoskins' Facebook account*:



107.   As of April 3, 2026, despite Garrison filing its lawsuit against Hoskins, these misappropriated images are still posted to Hoskins' personal Facebook account and are still accessible to the public.

108.   In March 2025, Hoskins posted an advertisement for the Zip Defendants to a Facebook group called "Pine Island, FL Community Information | Bokeelia | StJames City | Matlacha."

109.   In that advertisement, Hoskins used the same images misappropriated from Garrison's website depicted in Examples 9 to 16 above.



110. Hoskins' post contains a hyperlink to the Zip Defendants' website.

111. As of April 3, 2026, despite Garrison filing its lawsuit against him, Hoskins' post to the Pine Island Facebook group remains accessible to the public and still contains Garrison's misappropriated images, available at https://www.facebook.com/groups/745646259892533/posts/1329498241507329/.

112. Defendants have also misappropriated Garrison's CAD design drawings for their flood control products.

113. Garrison's drawings are attached as **Exhibit B**. Garrison's CAD design drawings are available at https://www.garrisonflood.com/s/Hammerhead-Shop-Drawings-All-1_20_25.pdf.

114. Defendants' misappropriated drawings are attached as **Exhibit C**. Defendants' misappropriated drawings are available on their website at https://zippoolcagescreenrepairswfl.com/wp-content/uploads/2025/03/Zip-Flood-Protection-Drawings.pdf.

115. Defendants posted those misappropriated design drawings on their website, linking to those drawings on a page of their website that advertised Defendants' flood barrier products and services.

116. As can be seen, Defendants copied the entire set of Garrison's drawings, deceptively altered the drawings to place the Zip Defendants' name over Garrison's name, and removed the identifying project name of "Arnon Rosen."

117. Customers have told Garrison that others (i.e., Defendants) are selling Garrison's products at half price.

118. Defendants' misconduct has caused and is causing Garrison to suffer damages and harm, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

119. Moreover, Defendants have been unjustly enriched by deriving, among other things, misappropriated goodwill and reputation, increased sales, and higher profits by virtue of their misconduct.

120. This suit seeks among other things Garrison's damages, divestiture of Defendants' unjust enrichment, and an injunction stopping Defendants' unlawful conduct as set forth above and prohibiting Defendants from continuing such unlawful conduct.

121. Garrison has retained the law firm of Holland & Knight LLP for purposes of this action and has agreed to pay reasonable attorneys' fees.

## CLAIMS FOR RELIEF

### COUNT I
**Copyright Infringement**
**(17 U.S.C. §§ 101, *et seq*.)**
**(Against the Zip Defendants)**

122. Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

46

123. The Works described in paragraphs 39 through 55 and reflected in **Composite Exhibit A** are the subject of this copyright claim.

124. The Works are original works and copyrightable subject matter under the copyright laws of the United States.

125. Garrison is the owner of valid copyrights in the Works, and the Register of Copyrights has issued valid Certificates of Registration for the Works, as reflected in **Composite Exhibit A**.

126. Garrison has complied in all respects with 17 U.S.C. §§ 101, *et seq.*, and has secured the exclusive rights, title, and interest in and to all copyrights in each of the Works.

127. The Zip Defendants had access to the Works before the Zip Defendants commenced their acts of infringement by visiting Garrison's publicly available website or by obtaining copies through third parties who visited Garrison's website.

128. The infringing works presented to the consuming public by the Zip Defendants are strikingly similar to the Works owned by Garrison.

129. The Zip Defendants willfully and deliberately and without permission infringed Garrison's copyrights in violation of the Copyright Act, including by copying the protected components of the Works, by creating derivative works, as well as by publicly displaying, publishing, and distributing the Works on the Zip

Defendants' website, in the Zip Defendants' marketing materials, and through Hoskins' social media accounts.

130. The Zip Defendants directly engaged in such willful and deliberate infringement of Garrison's copyrights, including by instructing or directing one or more of their agents, officers, or managers, including Hoskins, while acting in the scope of their agency and authority granted by the Zip Defendants, to take the infringing acts.

131. In addition and in the alternative, the Zip Defendants had the right and ability to supervise and control the infringing acts of one or more of their agents, officers, or managers, including Hoskins, while acting in the scope of their agency and authority granted by the Zip Defendants.

132. The Zip Defendants failed to stop the infringing acts of one or more of their agents, officers, or managers, including Hoskins, while acting in the scope of their agency and authority granted by the Zip Defendants.

133. The Zip Defendants derived financial benefit from the infringing acts of one or more of their agents, officers, or managers, including Hoskins, while acting in the scope of their agency and authority granted by the Zip Defendants.

134. The infringing works are virtually identical copies in terms of the protected portions of the Works, including choice of subject matter, lighting, shading, drawing style, and positioning and angle of the products.

48

135. A comparison between the Works and the images used on the Zip Defendants' website, in the Zip Defendants' marketing materials, and through Hoskins' social media accounts makes those striking similarities apparent.

136. A side-by-side comparison of each of the copyrighted images and each of the Zip Defendants' uses is attached as **Composite Exhibit D**.

137. In addition and in the alternative, the infringing works presented to the consuming public by the Zip Defendants are at least substantially similar to the Works owned by Garrison.

138. The Zip Defendants' infringing actions were taken without the consent or other permission of Garrison.

139. The Zip Defendants' infringing actions are the direct and proximate cause of damages and harm to Garrison, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

140. The Zip Defendants have realized unjust profits and reputational gains and advantages because of their infringement. To the extent their infringement may have ceased, the Zip Defendants will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through their infringement and thereafter wrongfully obtained corresponding increases in their goodwill and reputation in the marketplace, increases in their sales of products and services, and increases in their profits.

141. In addition and in the alternative, there is no adequate remedy at law, and Garrison is suffering and will continue to suffer irreparable injury in the absence of equitable relief prohibiting the Zip Defendants' unlawful conduct.

## COUNT II
### Copyright Infringement
### (17 U.S.C. §§ 101, *et seq.*)
### (Against Hoskins)

142. Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

143. The Works described in paragraphs 39 through 55 and reflected in **Composite Exhibit A** are the subject of this copyright claim.

144. The Works are original works and copyrightable subject matter under the copyright laws of the United States.

145. Garrison is the owner of valid copyrights in the Works, and the Register of Copyrights has issued valid Certificates of Registration for the Works, as reflected in **Composite Exhibit A**.

146. Garrison has complied in all respects with 17 U.S.C. §§ 101, *et seq.*, and has secured the exclusive rights, title, and interest in and to all copyrights in each of the Works.

147. Hoskins had access to the Works before Hoskins commenced his acts of infringement by visiting Garrison's publicly available website or by obtaining copies through third parties who visited Garrison's website.

148. The infringing works presented to the consuming public by Hoskins are strikingly similar to the Works owned by Garrison.

149. Hoskins willfully and deliberately and without permission infringed Garrison's copyrights in violation of the Copyright Act, including by copying the protected components of the Works, by creating derivative works, as well as by publicly displaying, publishing, and distributing the Works on the Zip Defendants' website, in the Zip Defendants' marketing materials, and through Hoskins' social media accounts.

150. In the line and scope of his authority as manager and owner of the Zip Defendants, Hoskins personally engaged in these infringing acts.

151. In addition and in the alternative, Hoskins instructed or directed one or more of the agents of the Zip Defendants, while acting in the scope of their agency and authority granted by the Zip Defendants, to take these infringing acts.

152. In addition and in the alternative, Hoskins as manager and owner of the Zip Defendants had the right and ability to supervise and control the infringing acts of one or more of the agents of the Zip Defendants, while acting in the scope of their agency and authority granted by the Zip Defendants.

153. Hoskins failed to stop the infringing acts of one or more of the agents of the Zip Defendants, while acting in the scope of their agency and authority granted by the Zip Defendants.

154. Hoskins derived financial benefit from the infringing acts of one or more of the agents of the Zip Defendants, while acting in the scope of their agency and authority granted by the Zip Defendants.

155. The infringing works are virtually identical copies in terms of the protected portions of the Works, including choice of subject matter, lighting, shading, drawing style, and positioning and angle of the products.

156. A comparison between the Works and the images used on the Zip Defendants' website, in the Zip Defendants' marketing materials, and through Hoskins' social media accounts makes those striking similarities apparent.

157. A side-by-side comparison of each of the copyrighted images and each of Hoskins' uses is attached as **Composite Exhibit D**.

158. In addition and in the alternative, the infringing works presented to the consuming public by Hoskins are at least substantially similar to the Works owned by Garrison.

159. Hoskins' infringing actions were taken without the consent or other permission of Garrison.

160. Hoskins' infringing actions are the direct and proximate cause of damages and harm to Garrison, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

161. Hoskins has realized unjust profits and reputational gains and advantages because of his infringement. To the extent his infringement may have ceased, Hoskins will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through his infringement and thereafter wrongfully obtained corresponding increases in his and his Zip Defendants' goodwill and reputation in the marketplace, increases in his and his Zip Defendants' sales of products and services, and increases in his and his Zip Defendants' profits.

162. In addition and in the alternative, there is no adequate remedy at law, and Garrison is suffering and will continue to suffer irreparable injury in the absence of equitable relief prohibiting Hoskins' unlawful conduct.

## COUNT III
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**(FDUTPA, Fla. Stat. §§ 501.201, *et seq*.)**
**(Against the Zip Defendants)**

163. Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

164. FDUTPA prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts in the conduct of any trade or commerce. FDUTPA protects legitimate business enterprises, like Garrison, from those who engage in unfair methods of competition.

165. The Zip Defendants engaged in deceptive acts and unfair trade practices by misappropriating Garrison's images and other website content and presenting each as the Zip Defendants' own.

166. The Zip Defendants engaged in these deceptive acts and unfair trade practices through one or more of their agents, officers, or managers, including Hoskins, while acting in the scope of their agency and authority granted by the Zip Defendants.

167. The Zip Defendants' deceptive acts and unfair trade practices were likely to, and did, mislead or deceive the consuming public to believe that the Zip Defendants sold, designed, engineered, and installed the shown products and completed installation flood control projects, when in fact the shown products and completed installation projects were Garrison's.

168. The Zip Defendants' unauthorized uses of Garrison's images and other website content were likely to, and did, mislead or deceive the consuming public as to the nature, quality, and characteristics of the Zip Defendants' products, and the Zip Defendants' knowledge, skill, experience, and expertise assessing, engineering, constructing, and installing flood control products.

169. The Zip Defendants' unauthorized uses of Garrison's images and other website content were likely to, and did, mislead or deceive the consuming public as

to the origin, source, sponsorship, or affiliation of the products and services depicted in the content and the products and services of the Zip Defendants.

170. The Zip Defendants' unlawful actions harmed both the consuming public and Garrison.

171. The Zip Defendants' unlawful actions were conducted with the intent to induce others to rely upon such deceptive and unfair acts and practices, in order to mislead or deceive the consuming public and thereby gain an increase in sales, a larger customer base, increases in their goodwill and reputation in the marketplace, and higher prices.

172. The Zip Defendants' unlawful actions constitute willfully unfair and deceptive conduct in violation of FDUTPA, §§ 501.201, *et seq.*, Florida Statutes.

173. The Zip Defendants' unlawful actions are the direct and proximate cause of damages and harm to Garrison, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

174. The Zip Defendants have realized unjust profits and reputational gains and advantages because of their unlawful actions. To the extent their unlawful actions may have ceased, the Zip Defendants will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through their unlawful actions and thereafter wrongfully obtained

55

corresponding increases in their goodwill and reputation in the marketplace, increases in their sales of products and services, and increases in their profits.

175. In addition and in the alternative, there is no adequate remedy at law, and Garrison is suffering and will continue to suffer irreparable injury in the absence of equitable relief prohibiting the Zip Defendants' unlawful conduct.

## COUNT IV
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### (FDUTPA, Fla. Stat. §§ 501.201, *et seq*.)
### (Against Hoskins)

176. Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

177. FDUTPA prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts in the conduct of any trade or commerce. FDUTPA protects legitimate business enterprises, like Garrison, from those who engage in unfair methods of competition.

178. Hoskins engaged in deceptive acts and unfair trade practices by misappropriating Garrison's images and other website content and presenting each as the Zip Defendants' own.

179. In the line and scope of his authority as manager and owner of the Zip Defendants, Hoskins personally engaged in these deceptive acts and unfair trade practices.

180.  In addition and in the alternative, Hoskins directed or permitted these deceptive acts and unfair trade practices through one or more of the agents of the Zip Defendants, while acting in the scope of their agency and authority granted by the Zip Defendants.

181.  Hoskins' deceptive acts and unfair trade practices were likely to, and did, mislead or deceive the consuming public to believe that the Zip Defendants sold, designed, engineered, and installed the shown products and completed installation flood control projects, when in fact the shown products and completed installation projects were Garrison's.

182.  Hoskins' unauthorized uses of Garrison's images and other website content were likely to, and did, mislead or deceive the consuming public as to the nature, quality, and characteristics of the Zip Defendants' products, and the Zip Defendants' knowledge, skill, experience, and expertise assessing, engineering, constructing, and installing flood control products.

183.  Hoskins' unauthorized uses of Garrison's images and other website content were likely to, and did, mislead or deceive the consuming public as to the origin, source, sponsorship, or affiliation of the products and services depicted in the content and the products and services of the Zip Defendants.

184.  Hoskins' unlawful actions harmed both the consuming public and Garrison.

57

185. Hoskins' unlawful actions were conducted with the intent to induce others to rely upon such deceptive and unfair acts and practices, in order to mislead or deceive the consuming public and thereby gain an increase in sales, a larger customer base, increases in his and his Zip Defendants' goodwill and reputation in the marketplace, and higher prices.

186. Hoskins' unlawful actions constitute willfully unfair and deceptive conduct in violation of FDUTPA, §§ 501.201, *et seq*., Florida Statutes.

187. Hoskins' unlawful actions are the direct and proximate cause of damages and harm to Garrison, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

188. Hoskins has realized unjust profits and reputational gains and advantages because of his unlawful actions. To the extent his unlawful actions may have ceased, Hoskins will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through his unlawful actions and thereafter wrongfully obtained corresponding increases in his and his Zip Defendants' goodwill and reputation in the marketplace, increases in his and his Zip Defendants' sales of products and services, and increases in his and his Zip Defendants' profits.

189. In addition and in the alternative, there is no adequate remedy at law, and Garrison is suffering and will continue to suffer irreparable injury in the absence of equitable relief prohibiting Hoskins' unlawful conduct.

## COUNT V
**Violation of the Lanham Act, False Designation of Origin/Unfair Competition
(15 U.S.C. § 1125(a)(1)(A))
(Against the Zip Defendants)**

190. Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

191. 15 U.S.C. § 1125(a)(1)(A) prohibits the use of unfair, false, and misleading methods of competition that are likely to cause confusion or mistake as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person.

192. The Zip Defendants engaged in false designation of origin and unfair competition by, without permission, misappropriating Garrison's images and other website content depicting Garrison's completed installation projects and superior products, and then presenting them on the Zip Defendants' website, in the Zip Defendants' marketing materials, and through Hoskins' social media accounts as the Zip Defendants' own products and completed installation projects.

193. The Zip Defendants engaged in false designation of origin and unfair competition by, among other things, misleading the consuming public to believe that

the Zip Defendants had sold and installed the depicted products and installation projects, when in truth the shown products and completed installation projects were Garrison's.

194.   The Zip Defendants engaged in these acts of false designation of origin and unfair competition through one or more of their agents, officers, or managers, including Hoskins, while acting in the scope of their agency and authority granted by the Zip Defendants.

195.   The Zip Defendants' unauthorized uses of images of Garrison's products, work product, and completed installation projects, were likely to, and did, confuse or deceive the consuming public as to the origin, source, sponsorship, or affiliation of the depicted products and services.

196.   The Zip Defendants' unlawful actions affected interstate commerce by causing false designations of origin to be published on the Zip Defendants' website, in the Zip Defendants' marketing materials, and through Hoskins' social media accounts accessible to the consuming public, resulting in the Zip Defendants' products and services entering interstate commerce.

197.   The Zip Defendants' unlawful actions were willful.

198.   The Zip Defendants' unlawful actions constitute a violation of 15 U.S.C. § 1125(a)(1)(A).

199. The Zip Defendants' unlawful actions are the direct and proximate cause of damages and harm to Garrison, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

200. The Zip Defendants have realized unjust profits and reputational gains and advantages because of their unlawful actions. To the extent their unlawful actions may have ceased, the Zip Defendants will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through their unlawful actions and thereafter wrongfully obtained corresponding increases in their goodwill and reputation in the marketplace, increases in their sales of products and services, and increases in their profits.

201. In addition and in the alternative, there is no adequate remedy at law, and Garrison is suffering and will continue to suffer irreparable injury in the absence of equitable relief prohibiting the Zip Defendants' unlawful conduct.

### COUNT VI
**Violation of the Lanham Act, False Designation of Origin/Unfair Competition**
**(15 U.S.C. § 1125(a)(1)(A))**
**(Against Hoskins)**

202. Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

203. 15 U.S.C. § 1125(a)(1)(A) prohibits the use of unfair, false, and misleading methods of competition that are likely to cause confusion or mistake as to the affiliation, connection, or association of such person with another person, or

as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person.

204. Hoskins engaged in false designation of origin and unfair competition by, without permission, misappropriating Garrison's images and other website content depicting Garrison's completed installation projects and superior products, and then presenting them on the Zip Defendants' website, in the Zip Defendants' marketing materials, and through Hoskins' social media accounts as the Zip Defendants' own products and completed installation projects.

205. Hoskins engaged in false designation of origin and unfair competition by, among other things, misleading the consuming public to believe that the Zip Defendants had sold and installed the depicted products and installation projects, when in truth the shown products and completed installation projects were Garrison's.

206. In the line and scope of his authority as manager and owner of the Zip Defendants, Hoskins personally engaged in these acts of false designation of origin and unfair competition.

207. In addition and in the alternative, Hoskins directed or permitted these acts of false designation of origin and unfair competition through one or more of the agents of the Zip Defendants, while acting in the scope of their agency and authority granted by the Zip Defendants.

208. Hoskins' unauthorized uses of images of Garrison's products, work product, and completed installation projects, were likely to, and did, confuse or deceive the consuming public as to the origin, source, sponsorship, or affiliation of the depicted products and services.

209. Hoskins' unlawful actions affected interstate commerce by causing false designations of origin to be published on the Zip Defendants' website, in the Zip Defendants' marketing materials, and through Hoskins' social media accounts accessible to the consuming public, resulting in the Zip Defendants' products and services entering interstate commerce.

210. Hoskins' unlawful actions were willful.

211. Hoskins' unlawful actions constitute a violation of 15 U.S.C. § 1125(a)(1)(A).

212. Hoskins' unlawful actions are the direct and proximate cause of damages and harm to Garrison, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

213. Hoskins has realized unjust profits and reputational gains and advantages because of his unlawful actions. To the extent his unlawful actions may have ceased, Hoskins will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through his unlawful actions and thereafter wrongfully obtained corresponding increases in his

63

and his Zip Defendants' goodwill and reputation in the marketplace, increases in his and his Zip Defendants' sales of products and services, and increases in his and his Zip Defendants' profits.

214.   In addition and in the alternative, there is no adequate remedy at law, and Garrison is suffering and will continue to suffer irreparable injury in the absence of equitable relief prohibiting Hoskins' unlawful conduct.

**COUNT VII**
**Violation of the Lanham Act, False Advertising/Unfair Competition**
**(15 U.S.C. § 1125(a)(1)(B))**
**(Against the Zip Defendants)**

215.   Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

216.   15 U.S.C. § 1125(a)(1)(B) prohibits the use of unfair, false, and misleading methods of competition.

217.   The Zip Defendants engaged in false advertising and unfair competition by holding out images of Garrison's products, completed installation projects, trade dress, work product, other website content, and marketing materials as the Zip Defendants' own products and completed installation projects.

218.   The Zip Defendants engaged in false advertising and unfair competition by leading the consuming public to believe that the Zip Defendants provided products and services of comparable quality to Garrison, when in reality, the flood

control products and installation services offered by the Zip Defendants are inferior to Garrison's.

219. The Zip Defendants engaged in false advertising and unfair competition by leading the consuming public to believe that the Zip Defendants possessed more installation-related knowledge, skill, and experience than they did, and had engineering and construction expertise and installation experience comparable to Garrison, when the Zip Defendants lacked such knowledge, skill, experience, and expertise and were in fact newcomers to the industry and marketplace.

220. The Zip Defendants engaged in these acts of false advertising and unfair competition through one or more of their agents, officers, or managers, including Hoskins, while acting in the scope of their agency and authority granted by the Zip Defendants.

221. The Zip Defendants' unauthorized uses of images of Garrison's products, installation projects, and work product and materials were likely to, and did, confuse or deceive the consuming public as to the nature, quality, and characteristics of the Zip Defendants' products and services, and as to the Zip Defendants' knowledge, skill, experience, and expertise.

222. The Zip Defendants' unauthorized uses of images of Garrison's products, installation projects, and work product and materials were material to the consuming public's decisions to purchase the Zip Defendants' products and services.

223.    The Zip Defendants' unlawful actions affected interstate commerce by causing false advertisements to be published on the Zip Defendants' website, in the Zip Defendants' marketing materials, and through Hoskins' social media accounts accessible to the consuming public, resulting in the Zip Defendants' products and services entering interstate commerce.

224.    The Zip Defendants' unlawful actions were willful.

225.    The Zip Defendants' unlawful actions constitute a violation of 15 U.S.C. § 1125(a)(1)(B).

226.    The Zip Defendants' unlawful actions are the direct and proximate cause of damages and harm to Garrison, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

227.    The Zip Defendants have realized unjust profits and reputational gains and advantages because of their unlawful actions.  To the extent their unlawful actions may have ceased, the Zip Defendants will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through their unlawful actions and thereafter wrongfully obtained corresponding increases in their goodwill and reputation in the marketplace, increases in their sales of products and services, and increases in their profits.

228. In addition and in the alternative, there is no adequate remedy at law, and Garrison is suffering and will continue to suffer irreparable injury in the absence of equitable relief prohibiting the Zip Defendants' unlawful conduct.

## COUNT VIII
### Violation of the Lanham Act, False Advertising/Unfair Competition
### (15 U.S.C. § 1125(a)(1)(B))
### (Against Hoskins)

229. Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

230. 15 U.S.C. § 1125(a)(1)(B) prohibits the use of unfair, false, and misleading methods of competition.

231. Hoskins engaged in false advertising and unfair competition by holding out images of Garrison's products, completed installation projects, trade dress, work product, other website content, and marketing materials as the Zip Defendants' own products and completed installation projects.

232. Hoskins engaged in false advertising and unfair competition by leading the consuming public to believe that the Zip Defendants provided products and services of comparable quality to Garrison, when in reality, the flood control products and installation services offered by the Zip Defendants are inferior to Garrison's.

233. Hoskins engaged in false advertising and unfair competition by leading the consuming public to believe that the Zip Defendants possessed more installation-

67

related knowledge, skill, and experience than they did, and had engineering and construction expertise and installation experience comparable to Garrison, when the Zip Defendants lacked such knowledge, skill, experience, and expertise and were in fact newcomers to the industry and marketplace.

234. In the line and scope of his authority as manager and owner of the Zip Defendants, Hoskins personally engaged in these acts of false advertising and unfair competition.

235. In addition and in the alternative, Hoskins directed or permitted these acts of false advertising and unfair competition through one or more of the agents of the Zip Defendants, while acting in the scope of their agency and authority granted by the Zip Defendants.

236. Hoskins' unauthorized uses of images of Garrison's products, installation projects, and work product and materials were likely to, and did, confuse or deceive the consuming public as to the nature, quality, and characteristics of the Zip Defendants' products and services, and as to the Zip Defendants' knowledge, skill, experience, and expertise.

237. Hoskins' unauthorized uses of images of Garrison's products, installation projects, and work product and materials were material to the consuming public's decisions to purchase the Zip Defendants' products and services.

238.   Hoskins' unlawful actions affected interstate commerce by causing false advertisements to be published on the Zip Defendants' website, in the Zip Defendants' marketing materials, and through Hoskins' social media accounts accessible to the consuming public, resulting in the Zip Defendants' products and services entering interstate commerce.

239.   Hoskins' unlawful actions were willful.

240.   Hoskins' unlawful actions constitute a violation of 15 U.S.C. § 1125(a)(1)(B).

241.   Hoskins' unlawful actions are the direct and proximate cause of damages and harm to Garrison, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

242.   Hoskins has realized unjust profits and reputational gains and advantages because of his unlawful actions.  To the extent his unlawful actions may have ceased, Hoskins will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through his unlawful actions and thereafter wrongfully obtained corresponding increases in his and his Zip Defendants' goodwill and reputation in the marketplace, increases in his and his Zip Defendants' sales of products and services, and increases in his and his Zip Defendants' profits.

243. In addition and in the alternative, there is no adequate remedy at law, and Garrison is suffering and will continue to suffer irreparable injury in the absence of equitable relief prohibiting Hoskins' unlawful conduct.

**COUNT IX**
**Unjust Enrichment**
**(Florida common law)**
**(Against the Zip Defendants)**

244. Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

245. Garrison conferred benefits on the Zip Defendants in the form of publishing Garrison's proprietary website content.

246. The Zip Defendants voluntarily accepted and retained the benefits conferred.

247. The Zip Defendants misappropriated Garrison's work product, website content and design, and images of Garrison's products and completed installation projects and held them out as their own.

248. The Zip Defendants engaged in unlawful conduct as set forth above.

249. The Zip Defendants engaged in unlawful conduct as set forth above through one or more of their agents, officers, or managers, including Hoskins, while acting in the scope of their agency and authority granted by the Zip Defendants.

250. The Zip Defendants' unauthorized uses of Garrison's images and other website content were likely to, and did, confuse or deceive the consuming public as

to the nature, quality, and characteristics of the Zip Defendants' products and services, as well as the Zip Defendants' knowledge, skill, experience, and expertise.

251. The Zip Defendants' unlawful conduct was likely to, and did, confuse or deceive the consuming public as to the origin, source, sponsorship, or affiliation of the subject products and services.

252. The Zip Defendants had knowledge of these unfair and unearned benefits and willfully acted to obtain them.

253. The Zip Defendants have realized unjust profits and reputational gains and advantages because of their unlawful actions. To the extent their unlawful actions may have ceased, the Zip Defendants will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through their unlawful actions and thereafter wrongfully obtained corresponding increases in their goodwill and reputation in the marketplace, increases in their sales of products and services, and increases in their profits.

254. The circumstances render inequitable the Zip Defendants' retention of the benefits conferred.

## COUNT X
### Unjust Enrichment
### (Florida common law)
### (Against Hoskins)

255. Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

71

256. Garrison conferred benefits on Hoskins in the form of publishing Garrison's proprietary website content.

257. Hoskins voluntarily accepted and retained the benefits conferred.

258. Hoskins misappropriated Garrison's work product, website content and design, and images of Garrison's products and completed installation projects and held them out as the Zip Defendants' own.

259. In the line and scope of his authority as manager and owner of the Zip Defendants, Hoskins personally engaged in unlawful conduct as set forth above.

260. In addition and in the alternative, Hoskins directed or permitted unlawful conduct as set forth above through one or more of the agents of the Zip Defendants, while acting in the scope of their agency and authority granted by the Zip Defendants.

261. Hoskins' unauthorized uses of Garrison's images and other website content were likely to, and did, confuse or deceive the consuming public as to the nature, quality, and characteristics of the Zip Defendants' products and services, as well as the Zip Defendants' knowledge, skill, experience, and expertise.

262. Hoskins' unlawful conduct was likely to, and did, confuse or deceive the consuming public as to the origin, source, sponsorship, or affiliation of the subject products and services.

263. Hoskins had knowledge of these unfair and unearned benefits and willfully acted to obtain them.

264. Hoskins has realized unjust profits and reputational gains and advantages because of his unlawful actions.  To the extent his unlawful actions may have ceased, Hoskins will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through his unlawful actions and thereafter wrongfully obtained corresponding increases in his and his Zip Defendants' goodwill and reputation in the marketplace, increases in his and his Zip Defendants' sales of products and services, and increases in his and his Zip Defendants' profits.

265. The circumstances render inequitable Hoskins' retention of the benefits conferred.

## COUNT XI
### Breach of Contract
### (Florida common law)
### (Against the Zip Defendants)

266. Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

267. Garrison's Terms of Service & Sale are both readily accessible on its website and conspicuous.

268. One or more of the Zip Defendants' agents, officers, or managers, including Hoskins, while acting in the scope of their agency and authority granted by the Zip Defendants, visited and reviewed Garrison's website.

269. By visiting and reviewing Garrison's website, the Zip Defendants agreed to Garrison's Terms of Service & Sale.

270. In addition and in the alternative, the Zip Defendants had constructive knowledge of the Terms of Service & Sale.

271. The Zip Defendants are competitors to Garrison with their own website.

272. The Zip Defendants would have been reasonably aware that Garrison's website would be subject to terms and conditions, including those against misappropriation of website content.

273. The Zip Defendants' unauthorized uses of Garrison's website content as set forth in this Complaint violate Garrison's Terms of Service & Sale on Garrison's website and therefore constitute breaches of contract.

274. As a natural and probable result of the Zip Defendants' breaches, Garrison has suffered damages and harm, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

275. The Zip Defendants have realized unjust profits and reputational gains and advantages because of their breaches as set forth above. To the extent their breaches may have ceased, the Zip Defendants will still continue to realize unjust

74

profits and reputational gains and advantages by having initially attracted and secured clientele through their breaches and thereafter wrongfully obtained corresponding increases in their goodwill and reputation in the marketplace, increases in their sales of products and services, and increases in their profits.

276.   In addition and in the alternative, there is no adequate remedy at law, and Garrison is suffering and will continue to suffer irreparable injury in the absence of equitable relief prohibiting the Zip Defendants' breaches.

**COUNT XII**
**Breach of Contract**
**(Florida common law)**
**(Against Hoskins)**

277.   Garrison incorporates by reference the allegations set forth in paragraphs 1 through 121 above as if fully restated herein.

278.   Garrison's Terms of Service & Sale are both readily accessible on its website and conspicuous.

279.   In the line and scope of his authority as manager and owner of the Zip Defendants, Hoskins personally visited and reviewed Garrison's website.

280.   In addition and in the alternative, Hoskins directed or permitted one or more of the agents of the Zip Defendants, while acting in the scope of their agency and authority granted by the Zip Defendants, to visit and review Garrison's website.

281.   By visiting and reviewing Garrison's website, Hoskins agreed to Garrison's Terms of Service & Sale.

282.   In addition and in the alternative, Hoskins had constructive knowledge of the Terms of Service & Sale.

283.   Hoskins operates and owns the Zip Defendants, competitors to Garrison, with their own website.

284.   Hoskins updates and maintains the Zip Defendants' website.

285.   Hoskins would have been reasonably aware that Garrison's website would be subject to terms and conditions, including those against misappropriation of website content.

286.   Hoskins' unauthorized uses of Garrison's website content as set forth in this Complaint violate Garrison's Terms of Service & Sale on Garrison's website and therefore constitute breaches of contract.

287.   As a natural and probable result of Hoskins' breaches, Garrison has suffered damages and harm, including lost sales, lost licensing fees, loss of goodwill, harm to reputation, and other harms.

288.   Hoskins has realized unjust profits and reputational gains and advantages because of his breaches as set forth above.  To the extent his breaches may have ceased, Hoskins will still continue to realize unjust profits and reputational gains and advantages by having initially attracted and secured clientele through his breaches and thereafter wrongfully obtained corresponding increases in his and his Zip Defendants' goodwill and reputation in the marketplace, increases in his and his

76

Zip Defendants' sales of products and services, and increases in his and his Zip Defendants' profits.

289.   In addition and in the alternative, there is no adequate remedy at law, and Garrison is suffering and will continue to suffer irreparable injury in the absence of equitable relief prohibiting Hoskins' breaches.

## PRAYER FOR RELIEF AND DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff, Garrison, demands judgment in its favor and against Defendants, Zip Pool Cage Screen Repair SWFL, LLC; Zip Flood Control Pool Cages Hurricane Windows & Shutters LLC; and Edward B. Hoskins for all appropriate damages, remedies, and legal and equitable relief available under applicable law, including:

(a)   Awarding Garrison all available compensatory damages, including costs of remedial advertising;

(b)   Awarding Garrison all available multiples or enhancements of damages under governing laws;

(c)   Awarding Garrison its attorneys' fees;

(d)   Permanently enjoining Defendants from:

(i)   infringing Garrison's copyrights;

(ii)   using, advertising, posting, publishing, or displaying Garrison Systems, LLC's photographs, trade dress, trademarks, service marks,

77

copyrighted materials, work product, product designs, images, and any other of Garrison's sales, marketing, or website content or materials;

(iii)   making any false or misleading advertisements or statements regarding Garrison Systems, LLC, its products, or its services, including without limitation any false statements that Garrison Systems, LLC's products or materials are sourced in China, or any false statements that Garrison Systems, LLC's products are designed or perform the same as any other products offered by others; and

(iv)   claiming or suggesting a relationship between Garrison and Defendants;

(e)   Awarding Garrison pre- and post-judgment interest;

(f)   Awarding Garrison restitution in the form of disgorgement by Defendants of all of their profits and other benefits obtained as a result of their unlawful conduct set forth in this Complaint, including the monetary value of Defendants' unfairly increased goodwill and reputation; and

(g)   Awarding Garrison its costs and such other and further relief this Court deems proper, just, and equitable.

## **DEMAND FOR JURY TRIAL**

Garrison demands a trial by jury on all issues so triable.

78

Dated: April 3, 2026

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ Martin E. Burke
Martin E. Burke
  Florida Bar No.: 1015662
Robert S. Schenck
  Florida Bar No.: 1044532
100 N. Tampa Street, Suite 4100
Tampa, Florida 33602
Telephone: (813) 227-8500
Fax: (813) 229-0134
martin.burke@hklaw.com
   Secondary: gloria.mcknight@hklaw.com
robert.schenck@hklaw.com

*Attorneys for Garrison Systems, LLC*

79